CARL DAVIS, Plaintiff-Respondent, v. BESSIE DAVIS ROBERTS, MARILYN DAVIS FREDERICKS, ALICE DAVIS HANGE; RUSSELL THOMPSON, JAMES A. ZIPF, and CECILIA MARIE TWILLMEIER, Defendants-Appellants, No. 44942—295 S. W. (2d) 152.

Court en Banc, November 12, 1956.

*Thomas R. McGinnis, Alexander & Robertson* and *Ernest E. Baker* for defendants-appellants.

1196

*Jesse E. Bishop* for plaintiff-respondent.

[154] DALTON, J.—Action in equity to establish a resulting trust in described real estate in the City of St. Louis and, in the alternative, if a resulting trust be denied, plaintiff asked that the interest of the defendants in the described property be charged with all advancements made by plaintiff in the payment of the principal and interest on certain notes secured by deeds of trust on the described realty and for all taxes, repairs and upkeep paid. Defendants claimed fractional interests in the property, denied plaintiff's claim of resulting trust and filed a cross-action to determine title and for partition.

The court found the issues for plaintiff; that plaintiff was in truth and in fact the owner of the described real estate by reason of a resulting trust; and that defendants had no interest in the property. Partition was denied and defendants appealed.

Since the action is one to establish a resulting trust in real estate, title to real estate is directly involved and this court has jurisdiction of the appeal. Warford v. Smoot, Mo. Sup., 237 S.W. 2d 184; Art. V, Sec. 3, Const. of Mo. 1945.

Respondent has moved to dismiss the appeal for failure of appellants to comply with Supreme Court Rule 1.08. Counsel should comply with this rule, which is intended to aid both counsel and the court. Appellants' brief is subject to severe criticism, but the defects in the brief are insufficient to require the harsh penalty of dismissal. The motion is overruled.

Appellants complain that the amended petition, on its face, negatives plaintiff's right to a decree establishing a resulting trust. They further insist that the facts alleged show that plaintiff "is not entitled to a resulting trust for more than the proportionate part of the purchase price paid by him at the time of the sale." It will not be necessary to discuss this assignment at length, or separately from the merits of the case, because more facts are pleaded than the evidence establishes. It is sufficient to say that the petition was not attacked in the trial court; that the petition states a claim upon which equitable relief may be granted; and that it is immaterial that certain facts are stated which show that plaintiff is not entitled to all of the relief he asks. The rule is well settled that when a petition, which states a claim (although defectively) upon which relief may be granted, is not assailed in the trial court, it is too late to challenge the sufficiency for the first time on appeal. Stephenson v. Stephenson, 351 Mo. 8, 171 S.W. 2d 565, 569(19). In essential respects, however, the evidence conforms to the pleadings and a determination of the sufficiency of the evidence to sustain the relief granted will fully dispose of the assignment.

There is little direct conflict in the evidence. Defendants relied chiefly upon the cross-examination of plaintiff's witnesses and defendants' evidence was principally directed to matters affecting the credibility, weight and value of the testimony of these witnesses. In view of the trial court's finding in plaintiff's favor, we should defer and do defer to that finding in so far as it concerns the credibility of the witnesses. Accordingly, we shall direct our attention to certain facts which we think the record satisfactorily establishes.

Respondent is the son of Josh Davis and Lonah Hayden Davis. Appellants include respondent's three sisters and the son of a deceased sister. These four respondents claim a one-fifth interest each in the property, which consists of a house and lot located at 2910 Victor Street in the City of St. Louis. It is admitted that the property cannot be partitioned in kind. Legal title to the described real estate was acquired by Josh Davis and Lonah Hayden Davis, his wife, by warranty deed dated October 24, 1942. The deed recited a consideration of $1.00 and bore canceled U.S. Internal Revenue [155] stamps in the sum of $5.50. Josh Davis was 72 years of age at that time. He died in November 1947. Lonah Hayden Davis, his wife, survived and died April 11, 1949. Both parents died intestate. This action was instituted in the circuit court of the City of St. Louis on August 17, 1950; and the decree was entered February 14, 1955.

Respondent handled all of the matters connected with the purchase of the property. He had an associate inspect several properties that he had under consideration. He obtained a check or draft for $1,000 from a company with whom he had business connections in order to make the down payment and his parents executed notes and deeds of trust for the balance of the purchase price. The first deed of trust on the property was dated October 29, 1942, and secured a $3,000 note and 6 interest notes. The second deed of trust was dated the same date and secured 25 notes for a total of $1,000. The notes for the balance of the purchase price were payable at the office of the real estate company handling the sale of the property. Respondent conducted all negotiations concerning the purchase of the property through the real estate company and he subsequently paid off the 25 notes secured by the second deed of trust by obtaining monthly checks from the company from whom he had obtained the $1,000 check or draft to make the down payment on the property. While only the respondent appeared at the office of the real estate company, all notices were mailed from that office to Josh Davis concerning the payment of interest on the notes and taxes on the property and the original title deed was also mailed to him. After the property was purchased, the respondent, his mother, father and nephew resided in the property. Taxes on the property were assessed to the record owners and Josh Davis took credit in his 1943 and 1944 United States income tax returns for taxes paid and for the interest paid to the real

estate company on the notes secured by the first deed of trust. Subsequent to the institution of the present action, respondent purchased the $3,000 note and certain interest notes secured by the first deed of trust on the property.

There was evidence tending to show that respondent was the purchaser of the property; that his parents made no contribution to the purchase price; and that his parents did not have any money to so contribute. The witness admitted, however, that Josh Davis was employed by "the National Stockyards on the East Side" where he had been employed as a hog salesman and later as a hog inspector or "docker." Defendants' evidence tended to show that his income from his employment was $1925 in 1943 and $1979.89 in 1944. There was evidence that Mrs. Davis had said to one of her daughters that Carl (respondent) bought the property and that it was Carl's, and there was evidence that Mrs. Davis had told her niece (a Mrs. Faddis) "that Carl bought the property and put it in our name, but of course Carl paid for the property"; and that she (Mrs. Davis) was going to put it back in Carl's name. Some two weeks before her death, Mrs. Davis again told Mrs. Faddis that she was going to put the property back in Carl's name.

At the time the property was purchased, respondent was buying and selling stock at the National Stockyards in Illinois, and the business in which he was engaged was a "kind of a gambling affair" in which one could lose money. There was evidence that respondent, in the presence of a Mr. Hegger, on whose advice he was acting in purchasing the property, had asked his parents if he could put title to the property in their names for the reason that he was doing business over at the stockyards, where one could lose quite a bit of money, and "he thought this property would be better in his father's and mother's names."

After the death of his mother, respondent paid her burial expenses and the cost of a headstone. The amount of these expenditures does not appear from the record, nor is it clear that there was no administration on her estate.

[156] Defendants offered evidence tending to show that plaintiff did not get along well with his father and that, on one occasion, an argument took place (in the first part of 1947) wherein Josh Davis accused Carl of owing him $3,000 and "Carl says, you can get out, both of youse, and grandpa say, you can get out * * * we give you this place if you give us this three thousand dollars you owe us, you can have it."

In support of the decree, respondent points to his $1,000 cash payment on the purchase price of the property, to his subsequent payment of the notes secured by the second deed of trust, which deed of trust was executed by his parents after the property was purchased, and to his purchase of the notes secured by the first deed of trust.

Respondent also relies upon the oral testimony tending to show that he was the purchaser and true owner of the property; that title was taken in names of his parents for the reasons hereinbefore specified; and that his parents consented to the arrangement and recognized his ownership of the property. Respondent cites the case of Padgett v. Osborne, 359 Mo. 209, 221 S.W. 2d 210, 212, and relies upon certain well recognized rules of law stated therein, to wit: "The presumption where a child furnishes the money and title is taken in the name of the parent is that a resulting trust arises in favor of the child unless a different intent is manifested and a presumption of a gift or an advancement does not arise from the relationship. * * * Logically, the existence of a resulting trust arising from the acts of the parties is strengthened and fortified, not weakened and destroyed, by consistent oral expressions of the parties manifesting their intentions, understandings, and agreements that the grantee is seized and holds in trust for the purchaser and true owner although the agreement be void and unenforceable as an express trust because it relates to land and is not in writing." While the rules stated are well established and they apply in this case, they are insufficient to sustain the decree. Other applicable rules must be considered.

"A resulting trust, as distinguished from an express trust, is one implied by law from the acts and conduct of the parties and the facts and circumstances which at the time exist and attend the transaction out of which it arises." Little v. Mettee, 388 Mo. 1223, 93 S.W. 2d 1000, 1009(8); James v. James, Mo. Sup., 248 S.W. 2d 623, 627(10).

"As between strangers, a purchase-money resulting trust arises against the grantee of real property in favor of the payor of the purchase money unless it was the payor's intent that no such trust should arise; but the presumption of a resulting trust is rebuttable * * * This presumption is based upon the sound principle that, absent evidence to the contrary, it is not the intent of any such payor to make a gift to the grantee." Ferguson v. Stokes, Mo. Sup., 269 S.W. 2d 655, 659. And see Parker v. Blakeley, 338 Mo. 1189, 93 S.W. 2d 981, 988; Jankowski v. Delfert, 356 Mo. 184, 201 S.W. 2d 331, 334; James v. James, supra, 248 S.W. 2d 623, 627; Carr v. Carroll, Mo. Sup., 178 S.W. 2d 435; Decker v. Fittge, Mo. Sup., 276 S.W. 2d 144, 147(2). The rule applies in this state where the purchase-money is supplied by a child, the "money so advanced is not presumed to be a gift, the status of the child being the same as that of a stranger, at least where no legal obligation rests on the child to support the parent." Adams v. Adams, 348 Mo. 1041, 156 S.W. 2d 610, 614(1); 54 Am. Jur. 160, Sec. 205.

On the record presented in this case it clearly appears that at the time the warranty deed to the property in question was executed and delivered to respondent's parents, respondent had paid only $1,000

on the $5,000 purchase price of the property; and that the balance of the purchase price was paid, not by respondent, but by notes executed by respondent's parents and secured by deeds of trust [157] on the property. There is no evidence that respondent was under any legal obligation of any kind to pay the balance of the purchase price of the property. The test of the right to establish a resulting trust is the true ownership of the consideration upon which the title rests. Purvis v. Hardin, 343 Mo. 652, 122 S.W. 2d 936, 938(3). Respondent's payment on the purchase price, at the time title vested in his parents, was limited to the $1,000 payment. While the respondent subsequently paid off the 25 notes secured by the second deed of trust (for a total of $1,000) and also purchased the $3,000 note and certain interest notes secured by the first deed of trust, these facts do not aid the respondent on the issue of a resulting trust. 89 C.J.S. 961, Sec. 112. The fact that respondent purchased, rather than paid, the notes secured by the first deed of trust is further evidence that he did not consider the notes for the balance of the purchase price to be his personal obligation and he had assumed no unconditional obligation to pay any of these notes. Adams v. Adams, supra, 156 S.W. 2d 610, 616(10); Jacobs v. Jacobs, Mo. Sup., 272 S.W. 2d 185, 189; 89 C.J.S. 975, Sec. 121. Further, it is well settled that "a resulting trust must arise, if at all, at the instant the deed is taken. Unless the transaction is such that the moment the title passes the trust results from the transaction itself, then no trust results. It cannot be created by subsequent occurrences." Bender v. Bender, 281 Mo. 473, 220 S.W. 929, 930, and authorities there cited; Hiatt v. Hiatt, Mo. Sup., 168 S.W. 2d 1087; Parker v. Blakeley, supra; Lehr v. Moll, Mo. Sup., 247 S.W. 2d 686; 89 C.J.S. 950, Sec. 102e.

Respondent's payment of some of the purchase-money notes and the purchase of others after legal title to the property was vested in his parents, under the facts shown, was insufficient to give rise to a resulting trust. Adams v. Adams, supra; Jacobs v. Jacobs, supra; Clubine v. Frazer, 346 Mo. 1, 139 S.W. 2d 529, 532(12); 89 C.J.S. 951, Sec. 102e; 89 C.J.S. 973, Sec. 120.

Respondent insists that the facts in Padgett v. Osborne, supra, are very similar to the one at bar; and that that case is controlling. The Padgett case was an action to set aside a conveyance of real estate as having been made in fraud of creditors. Relief was denied because there was no proof of fraud and, further, erroneously we believe, on the theory of a resulting trust. The evidence in that case shows an express oral trust which was fully performed by a conveyance, which conveyance was not in fraud of the creditor's rights. The opinion states the facts as follows: "It was decided that Frances (Osborne, defendant) should purchase the property. The family discussed several times how the papers should be made out. Due to the fact that real estate values were uncertain at the time and the possibility of

further declines, or the loss of the property by foreclosure, a deficiency judgment on the $2,750 note, which conceivably could be collected of Frances, and Frances' desire to assure her parents of a home should something unforeseen occur and she predecease them, it was agreed the title should be taken in the names of John F. Osborne and Fannie E. Osborne, husband and wife. Frances Osborne paid $500 and her brother George L. advanced the additional $500 to make the $1,000 cash payment. The vendors conveyed by warranty deed, dated September 9, 1938, to 'John F. Osborne and Fannie E. Osborne, husband and wife,' and said grantees executed and delivered their $2,750 purchase price note and deed of trust against said real estate securing said note. This note was paid by Frances on March 1, 1940. Dorsey M. testified that his sister Frances asked him to accompany her when she paid off the note; and she took some money from a safety deposit vault, and she also had some Government bonds and some cash in her possession; that they proceeded to the Wilson D. Wood Mortgage Company's office where Frances paid the $2,750 note and [158] received the note and deed of trust. * * *. Frances purchased many articles for the household (stoker, refrigerator, carpets etc.), paid for the repairs on the property, maintained the home and provided for her parents therein. * * * On July 28, 1944, the mother executed the deed here attacked, transferring the Van Brunt property to the daughter, reserving a life estate in herself. The recited consideration was $1.00 and other valuable considerations. The mother died February 26, 1947 * * * The evidence on behalf of defendants was sufficient, if believed, to sustain the finding and judgment (for defendants). * * * When Fannie E. Osborne deeded the property to Frances Osborne, the purchaser, she executed the trust under which she held the legal title."

While the opinion in the Padgett case proceeds to the theory of a resulting trust and perhaps reached a correct result on the facts stated, no such trust could have resulted therein, except in the proportion that the $500 paid down by Frances Osborne bore to the total purchase price of the property. To the extent to which the opinion in that case conflicts with the opinion in this case, it should be overruled.

Respondent's right, therefore, to a resulting trust is limited to the payment of $1,000 on the $5,000 purchase price of the property or to a one-fifth interest in the described real estate. The applicable rule is as follows: "Where one person pays the whole or a part of the purchase price of land, and the contract or title is taken in the name of a third person, a resulting trust is created in behalf of the person paying said purchase money, in proportion to the amount so paid." Price v. Rausche, Mo. Sup., 186 S.W. 968, 971; Stevenson v. Smith, 189 Mo. 447, 466, 88 S.W. 86; Shelby v. Shelby, 357 Mo. 557, 209 S.W.

2d 896, 899; Decker v. Fittge, supra; Restatement, Trusts, Sec. 454; 89 C.J.S. 975, Trusts, Sec. 122.

Respondent of course is also the owner of a one-fifth interest in the remaining four-fifths interest in the described property by inheritance from his mother and he may have other rights for future consideration in the partition proceeding. The pleadings and record in this case are insufficient to determine respondent's rights, if any, to an accounting for advancements or to be subrogated to the rights of the former holder of the notes secured by the second deed of trust.

The judgment is reversed and the cause remanded for further proceedings in partition not inconsistent with this opinion. All concur.